IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEOPLE, TECHNOLOGY AND
PROCESSES, LLC,

      Plaintiff,

                             Case No.

v.

SCIENCE APPLICATIONS
INTERNATIONAL CORPORATION,
and LEIDOS, INC.

      Defendants.

_____/

## COMPLAINT

Plaintiff, People, Technology and Processes, LLC ("PTP"), sues defendants, Science Applications International Corporation ("Applications International") and Leidos, Inc. ("Leidos"), and states as follows:

### PARTIES

1.     PTP is a limited liability company organized in the State of Florida with its principal place of business in Lakeland, Florida.

2.     Applications International is a corporation incorporated in the State of Delaware, with its principal place of business in McLean, Virginia, who, pursuant to its website, maintains nineteen (19) offices within the State of Florida, including two (2) in Tampa, Florida, for the transaction of business in the Middle District of Florida and which engaged in the hereinafter described activities in the Middle District of Florida.

3.     Leidos is a corporation incorporated in the State of Delaware, with its principal place of business in Reston, Virginia, who, pursuant to its website, maintains twenty-nine (29) offices within the State of Florida, including four (4) in Tampa, Florida, for the transaction of business in the Middle District of Florida and which engaged in the hereinafter described activities in the Middle District of Florida.

4.     Leidos and Applications International are the resulting entities from the September 28, 2013 separation of the former Science Applications International Corporation, whereby Applications International retained the corporate name and Leidos retained the CAGE Code and DUNS Number.  Applications International and Leidos are hereinafter collectively referred to as "SAIC."

JURISDICTION & VENUE

5.     Jurisdiction exists pursuant to 28 U.S.C. §1332(a)(1) by virtue of diversity of citizenship.  This is an action between citizens of different states and the amount in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

6.     Venue is properly in this Court pursuant to 28 U.S.C. §1391(b)(1) and (b)(2) because the defendants reside in the Middle District of Florida under applicable law, and because all or a substantial part of the parties' agreements were negotiated, executed or delivered in the State of Florida; the parties' agreements are permissive as to venue; and a substantial part of the events and breaches on which the claim is based occurred within the Middle District of Florida.

7.     Leidos and Applications International share multiple offices within the Middle District of Florida, including a shared office in Tampa, Florida.

<u>BACKGROUND AND CONTRACTUAL RELATIONSHIP</u>

8.     PTP, prior to its relationship with SAIC, provided modeling and simulation tools to the U.S. Army Space and Missile Defense Command / Army Forces Strategic Command in support of U.S. and Coalition Forces in Afghanistan.

9.     To continue providing services to the U.S. Army Space and Missile Defense Command / Army Forces Strategic Command, PTP entered into an exclusive teaming arrangement with SAIC to provide services on a Warfighter Modeling, Simulation, Analysis, and Support Indefinite Delivery, Indefinite Quantity Contract.

10.     The Warfighter Modeling, Simulation, Analysis and Integration Support effort is multi-faceted, providing the Army, other service branches and DoD an advanced capability for modeling, simulation, analysis and integration of space and missile defense issues and other advanced defense technologies.   DoD advances toward assessing the operational effectiveness of new space and missile defense and other advanced defense technologies have increasingly driven the utilization of advanced simulation and modeling technologies as well as innovative analysis and integration techniques.   The need has emerged to synthesize multiple system simulations that can be used to interactively define, develop, evaluate and validate operational needs, concepts and designs in a distributed simulation environment.

11.     SAIC is a party to Prime Contract No. W9113M-10-10-D-003 (the "Prime Contract") issued by the United States Army Space Missile and Defense Command

("USASMDC").  PTP is not in possession of the Prime Contract and intends to obtain a copy of the Prime Contract, either through initial disclosures under F.R.C.P. 26 or through discovery.

12.     SAIC and PTP are parties to Subcontract, Indefinite Delivery/Indefinite Quantity, Fixed Price/Level of Effort, No.: P01010710, dated effective February 24, 2012 (the "Subcontract").  Plaintiff has filed its Motion to File Under Seal contemporaneously with this Complaint (the "Motion to Seal"), seeking leave to file the exhibits referred to herein under seal.  The Subcontract is designated as Exhibit "A" for identification purposes.

13.     Pursuant to Section 20.0 of the Subcontract, SAIC and PTP agreed that the Subcontract "shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia."

14.     Pursuant to the Subcontract, PTP agreed to provide, when authorized and directed pursuant to task orders: modeling tools, system modeling, analysis, and integration, defense system hardware and software integration, planning technology integration, data collection and synthesis, space applications technology, architecture development, testing and standards concepts, systems and technology support and program management (collectively, the "Modeling and Simulation Services").

15.     One illustration of the Modeling and Simulation Services provided by PTP is the creation and maintenance by PTP of databases to archive and organize information obtained during the capture and arrest of enemy combatants in support of the prosecution effort by U.S. armed forces legal authorities in Afghanistan.

16.     Under the Subcontract, indefinite delivery and quantity terms become fixed and definite as to delivery performance periods, quantities and unit price pursuant to separately issued "task orders."

17.     On or about June 27, 2012, SAIC issued and PTP accepted Subcontract Task Order 0003 Release 1, Period of Performance June 1, 2012 through July 28, 2013, as amended pursuant to Mod 1 through Mod 6 adding additional funding, for the total sum of $6,387,901.34 (collectively, "TO 0003"). TO 0003 is designated as Composite Exhibit "B" for identification purposes pursuant to the Motion to Seal.

18.     Under TO 0003, PTP, from June 1, 2012 until April 5, 2013, provided Modeling and Simulation Services by filling Full Time Equivalent positions at the New Kabul Compound, headquarters of U.S. Forces in Afghanistan, Camp Phoenix, Bagram Air Field, and other locations in theatre.   All of the Full Time Equivalent positions are filled by PTP with engineers, scientists, analysts, programmers, system analysts, senior principal investigators, technicians and administrative personnel who are employed by PTP (collectively, the "PTP Personnel").   PTP Personnel totaled 14 Full Time Equivalent positions by the end of TO 0003.

19.     On or about, March 7, 2013, the USASMDC issued Task Order Request for Proposal #0007 ("TORP 0007"), wherein it requested SAIC and PTP to provide a technical/management proposal to significantly increase and enhance the Modeling and Simulation Services supporting U.S. Forces - Afghanistan following the expiration of TO 0003 for the base period of April 6, 2013 through April 5, 2014 (the "Base Period"), as well as for the option period of April 6, 2014 through October 5, 2014 (the "Option

Period"). TORP 0007 is designated as Exhibit "C" for identification purposes pursuant to the Motion to Seal.

20.    Pursuant to TORP 0007, the number of Full Time Equivalents required during the Base Period would increase from 14 under TO 0003 to 49 under TO 0006.

21.    On or about, March 7, 2013, the USASMDC issued a Performance Work Statement in support of TORP 0007 (the "PWS"), which provided additional information, including the mission objective, scope, performance requirements, and other performance requirements.  The PWS is designated as Exhibit "D" for identification purposes pursuant to the Motion to Seal.

22.    PTP authored and submitted to SAIC a Past Performance Volume and Technical Management Volume that are responsive to the PWS and TORP 0007 (collectively the "Responsive Volumes"). SAIC accepted the Responsive Volumes and incorporated them into SAIC's response to TORP 0007.

23.    In connection with SAIC's response to TORP 0007, PTP was required by SAIC to discount its unit pricing in light of the increased volume of Full Time Equivalents that would be provided during the Base Period under the contemplated task order and SAIC accepted such discount.

24.    On or about April 4, 2013, PTP, as directed and in reliance upon the increased volume of Full Time Equivalents in TORP 0007, delivered its projected costs to SAIC and, on or about April 4, 2013 delivered its Certificate of Current Cost or Pricing Data (collectively, the "PTP Proposal"), with supporting detail illustrating the 29.5%

reduction in *price* to USASMDC (the "Volume Discount"). The PTP Proposal is designated as Exhibit "E" for identification purposes pursuant to the Motion to Seal.

25.     On or about April 4, 2013, SAIC submitted its Technical/Management Proposal in response to TORP 0007 (the "Management Proposal") in which it stated that it had formed an exclusive teaming arrangement with PTP to provide the rigorous planning and precise execution required to support the drawdown and retrograde movement of U.S. forces and equipment from Afghanistan. A copy of the Management Proposal is designated as Exhibit "F" for identification purposes pursuant to the Motion to Seal.

26.     SAIC and USASMDC accepted the Management Proposal, PTP Proposal and Volume Discount and, on or about May 22, 2013, SAIC issued and PTP accepted Subcontract Task Order 0006 Release 1, Period of Performance April 18, 2013 through April 17, 2014, as amended, pursuant to Revision 1, Mod 1, and Mod 2 adding additional funding, for a total amount of $19,204,872.37, which fully funded the 49 Full Time Equivalents (collectively, "TO 0006"). TO 0006 is designated as Composite Exhibit "G" for identification purposes pursuant to the Motion to Seal.

## PERFORMANCE UNDER TO 0006

27.     On or about May 22, 2013, PTP began to deploy PTP Personnel in Afghanistan to fill the 49 Full Time Equivalent positions ordered under TO 0006.

28.     At the outset of TO 0006, SAIC delayed PTP from deploying the 49 Full Time Equivalent positions ordered under TO 0006 in accordance with the Management Proposal, which was proposed and accepted by SAIC and USASMDC.

29.     On or about September 28, 2013, Science Applications International Corporation separated into Leidos and Applications International, with Applications International assuming the lead role as Contracting Officer for the Subcontract. The Notice of Separation from Applications International is designated as Exhibit "H" for identification purposes pursuant to the Motion to Seal.

30.     On or about January 31, 2014, SAIC notified PTP of its decision not to exercise the Option Period "in an effort to assist [PTP] in winding down Subcontract activity." The January 31, 2014 correspondence from SAIC is designated as Exhibit "I" for identification purposes pursuant to the Motion to Seal.

31.     SAIC breached TO 0006 and therefore the Subcontract by (i) failing to permit PTP to deploy the 49 Full Time Equivalent positions (ii) prematurely commencing the drawdown of PTP Personnel, and (iii) prematurely terminating TO 0006 all of which prevented PTP from realizing the benefit that was the basis for the Volume Discount. Over the course of performance of TO 0006, SAIC limited PTP Personnel to a maximum of 32 Full Time Equivalents during the Base Period, which is far below the 49 Full Time Equivalents bargained for under TO 0006.

32.     PTP has been damaged by SAIC's breach in failing and refusing to allow PTP to fully deploy the 49 Full Time Equivalents throughout the term of TO 0006.

33.     By way of illustration and without limitation of PTP's recoverable damages, because the Volume Discount was based on spreading overhead, general, and administrative costs over a larger number of Full Time Equivalents. Without the Volume Discount, the Modeling and Simulation Services under TO 0006 would have resulted in

$16,987,266.71 in billing for PTP Personnel instead of only $12,006,815.28, a loss to PTP in the amount of at least $4,980,451.43.

## CHOICE OF LAW AND GOOD FAITH NEGOTIATION

34.     On or about February 6, 2014, PTP asserted its right to an equitable adjustment based upon SAIC's failure to allow PTP to fill the 49 Full Time Equivalents and requested the initiation of good faith negotiations. The February 6, 2014 correspondence is designated as Exhibit "J" for identification purposes pursuant to the Motion to Seal.

35.     On or about February 21, 2014, SAIC stated that (i) it had not terminated the Subcontract, (ii) the Subcontract has not been changed and (iii) that PTP had no basis to demand an adjustment.   The February 21, 2014 correspondence is designated as Exhibit "K" for identification purposes pursuant to the Motion to Seal.

36.     PTP quantified and submitted its demand for adjustment for SAIC's breach of its obligations under TO 006 and the Subcontract in a letter, dated May 1, 2014, to Ms. Halley Hall, SAIC's Subcontracts Administrator (the "Demand for Adjustment"). The Demand for Adjustment is designated as Exhibit "L" for identification purposes pursuant to the Motion to Seal.

37.     SAIC, in its letter dated May 15, 2014, acknowledged receipt but denied liability stating "PTP's Demand for Adjustment has no basis in law" (the "SAIC Response"). The SAIC Response is designated as Exhibit "M" for identification purposes pursuant to the Motion to Seal.

38.     PTP, on May 19, 2014, transmitted its demand for SAIC to enter into good faith negotiations to resolve the Demand for Adjustment (the "Demand Letter") pursuant to Section 21.0(a) of the Subcontract and, pursuant to Section H-1(e) of Schedule C to the Subcontract, requested written approval for the release of specific information related to the Subcontract and Demand for Adjustment, including, without limitation, the exhibits to this complaint. The Demand Letter is designated as Exhibit "N" for identification purposes pursuant to the Motion to Seal.

39.     SAIC, on May 23, 2014, transmitted its response to the Demand Letter refusing to enter into good faith negotiations but provided written approval for the release of the information contained in this complaint and its exhibits (the "Authorization Letter.") The Authorization Letter is designated as Exhibit "O" for identification purposes pursuant to the Motion to Seal.

40.     SAIC has failed and refused to enter into good faith negotiations to resolve the Demand for Adjustment, which refusal constitutes an independent breach.

41.     PTP has performed all obligations and conditions precedent required by all agreements referenced in this Complaint or such requirements have been waived.

COUNT I<br>BREACH OF CONTRACT

42.     PTP realleges all of the allegations of paragraphs 1 through 41 as though fully set forth herein.

43.     TO 0006 and the Subcontract impose legally enforceable obligations upon PTP and SAIC.

44.     SAIC breached its agreement under TO 0006 and the Subcontract.

45.     As a result of SAIC's breaches, PTP has suffered damages, including special damages as alleged herein.

WHEREFORE, PTP respectfully requests that this Honorable Court enter judgment in favor of Plaintiff, People, Technology and Processes, LLC ("PTP") and against defendants, Science Applications International Corporation and Leidos, Inc., jointly and severally for damages, including special damages, costs and interest, and such further relief as the Court may deem appropriate.

<u>DEMAND FOR JURY TRIAL</u>

PTP hereby demands a jury trial on all issues so triable.

BARNETT, BOLT, KIRKWOOD, LONG & MCBRIDE

_____
Charles A. Carlson, Esq.
Florida Bar # 716286
Michael V. Hargett, Esq.
Florida Bar # 44097
601 Bayshore, Blvd., Suite 700
Tampa, Florida 33606
813-253-2020
813-251-6711 – Facsimile
ccarlson@barnettbolt.com
mhargett@barnettbolt.com

Counsel for People, Technology and Processes, LLC

BBKLDOCS-#766040